IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EDWARD HARMON : 
 : 
 : 
v. : Civil Action No. 15-2611
 : 
UNITED STATES OF AMERICA : 

**MEMORANDUM OPINION**

**I.     Background**

Pending in this medical malpractice action is Plaintiff Edward Harmon's Motion to Strike the Supplemental Expert Reports of Defense nephropathologist, Dr. Cinthia Drachenberg (in its entirety) and Defense nephrologist D. Richard Ugarte (in part). (ECF No. 63).  The matter was discussed during the recorded status conference held on March 15, 2018.  The Court has received briefing.  Upon consideration, the Court GRANTS the motion.

This case has been pending since **September 2015**, with formal discovery having closed fifteen months ago, on **December 9, 2016**. After the Court resolved the parties' cross motions for summary judgment by written memorandum opinion and order dated **September 15, 2017**, the Court permitted limited additional discovery on **damages only**.  Specifically, although the Court denied the Government's motion to exclude Plaintiff's expert nephrologist, Dr. Gehr, regarding his opinion on Harmon's prognosis for reaching end stage renal failure (and thus when he would need a kidney transplant), the Court permitted Dr. Gehr to update and refine his opinion on the timeline for such necessary follow-up care. *See* ECF No. 65, Hearing Tr. pps. 96-100. In fact, at the end of the motions hearing, the Government expressly confirmed for the Court that it understood the contemplated "supplemental discovery" to be "on the plaintiff's damages expert." *Id.* at 107.

Thereafter, in pleadings and in another recorded status conference with this Court, the Government reaffirmed that it understood the supplemental discovery to be limited to the Plaintiff's damages profile only. On October 31, 2017, for example, the Government urged this Court to amend the pretrial scheduling order so that its experts could fully respond to Plaintiff's damages report. The Government wrote, "Defense counsel also advised that she would provide this updated expert information to her **damages experts**, who may also wish to revise their opinions in light of both Mr. Harmon's new lab results and the updated **damages opinions** of Plaintiff's experts." ECF No. 51 (emphasis added). The Government again on November 3, 2017 persisted to this Court that it needed more time to secure supplemental damages opinions specifically because "[f]ull settlement authority cannot be granted without analysis of Plaintiff's updated **damages analysis***."* ECF No. 53, p. 2 (emphasis added). Then, on November 17, 2017, during a recorded status conference with the Court, the Government again pressed for additional time because its "**damages experts** are still reviewing Dr. Gehr's updated reports." ECF No. 56, Rec. Conf. 11/17/2017 (emphasis added). At no point did the Government ever communicate to Plaintiff's counsel or to this Court that it was even contemplating a revision of opinions as to causation in this matter.

Harmon now argues that this Court should strike Dr. Drachenberg's supplemental expert report *in toto* because she now offers a new opinion on causation based on old evidence, namely her examination of pathology slides. Harmon further urges that this Court strike Dr. Ugarte's supplemental expert report to the extent his new opinion relies on Dr. Drachenberg's new opinion. The Government claims that the supplemental opinions are responsive to Gehr's updated damages opinion, and that any surprise may be cured between now and trial.

**II.  Analysis**

Pursuant to Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide

information or identify a witness as required . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." To determine whether nondisclosure was substantially justified or harmless, courts look to five factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence.

*S. States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). "The first four factors . . . relate primarily to the harmlessness exception, while the last factor . . . relates mainly to the substantial justification exception." *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 190 (4th Cir. 2017). "The burden of establishing these factors lies with the non-disclosing party[.]" *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014).

The Court agrees that Drs. Drachenberg and Ugarte offer new opinions on causation based on old evidence, all of which goes well beyond the narrow and limited damages discovery flowing from Dr. Gehr's supplemental report. During the discovery period, Dr. Drachenberg's made clear in deposition that she did *not* intend to offer any opinion on what caused Harmon's initial elevated creatinine; she also confirmed that she had reviewed the pathology slides in advance of her deposition. ECF No. 63-2, pp. 16-19.[1]

Now, well over a year after formal discovery has closed, and in response to this Court's limited supplemental damages discovery, Dr. Drachenberg's proffered opinion centers on Harmon's "Crohn's disease itself" as "an important cause of Mr. Harmon's chronic kidney

---

[1] The Government also confirmed that Dr. Drachenberg reviewed the Trichome in January of 2017. Accordingly, by January 2017, fourteen months ago, Dr. Drachenberg had reviewed all slide pathology on which she bases her supplemental opinions. ECF No. 63-6.

damage." ECF No. 63-6. The supplemental report goes on to opine as to the difference between "acute" and "chronic" components of her review of the pathology slides, concluding ultimately that "to a reasonable degree of medical certainty," Harmon's pathology "cannot be attributed *purely* to Mesalamine, but can be attributed to Crohn's." *Id.* It is remarkable, and quite stunning, that despite Dr. Drachenberg claiming her supplemental opinions are "generated after evaluation" of Dr. Gehr's supplemental damages report, *not once* does she refer to Dr. Gehr's report in when setting out her supplemental opinions. ECF No. 63-6. Dr. Gehr's supplemental opinion, in short, appears irrelevant to Dr. Drachenberg's supplemental report. As to Dr. Ugarte's supplemental report, he relies exclusively on Dr. Drachenberg's supplemental opinions on the significance of the slide pathology to undergird the lion's share of his new opinions. ECF No. 63-7.

Given the context in which limited damages discovery was permitted, it is beyond dispute that the Plaintiff is surprised by these new opinions. The very reason why experts are asked at deposition to state expressly the *limits* of their opinions is to provide fair notice of that which the Plaintiff needs to contend at trial. Plaintiff did just that here, only to be whipsawed with new opinions on causation based on old evidence.

With regard to curing the surprise, the Plaintiff's opportunities are limited. Trial is a month away. Motions *in limine,* trial exhibits and pretrial statements are due tomorrow. These new opinions on causation – essentially attempting to apportion Harmon's kidney injury between Crohn's and the side effects of Mesalamine – are new, complex and subject to robust challenge. It will cost precious time and money to rebut these opinions, thus rendering it difficult, if not impossible, to fashion any equitable cure to the surprise. Nor will this Court continue the trial that has been set for many months in a case of this magnitude to accommodate the Government's

4

late disclosure, especially when the challenged supplemental reports make little to no reference to Dr. Gehr's supplemental opinions on damages.

The Government asserts that these supplemental opinions are "important" to its defense, and refers this Court to other Courts that have allowed similar late disclosures. The cases on which the Government relies are not persuasive here. *See e.g.*, *Tucker v. Ohtsu Tire & Rubber Co. Ltd.*, 49 F. Supp. 2d. 456 (D. Md. 1999) (allowing supplement of expert opinion *four months* before trial, and *ten days* before close of discovery); *Baptiste v. Bat'l R.R. Passenger Corp.*, CBD-14-3279 2015 WL 5714103 (allowing supplemental expert opinion where no trial date set).

The Court also notes that while the Government believes its opinions important, the opinions are also new, complex, and based on evidence long known to the Government. Chief among the new opinions is the Government's attempt to apportion the injury in terms of relative percentages of harm caused by Harmon's Crohn's disease versus Mesalamine exposure. In Maryland, "apportionment of damages is appropriate *only* where the injury is *reasonably* divisible and where there are two or more causes of the injury." *Carter v. Wallace & Gale Asbestos Settlement Trust*, 439 Md. 333, 348 (2014) (emphasis added). Where the injury is not reasonably divisible, the Plaintiff is entitled to full recovery if Plaintiff shows that Defendant's negligence is a substantial factor in causing injury to him. *Id.* at 350.

Throughout the pendency of this litigation, however, the Government has never contended that the injury to Harmon's kidneys is reasonably divisible so that damage arising from Crohn's, if any, can be separated from the damage arising from Mesalamine exposure. Whether kidney injury can scientifically be apportioned is its own elusive concept. Harmon will not be made to reinvent his entire case to deal with this new opinion at this juncture.

The Government attempts to cast this supplemental discovery as related to *damages*. This

5

is not quite accurate. The Government's apportionment theory first requires the Court to accept its new opinions as to causation. These new opinions include not only that Harmon's kidney injury was caused by both Crohn's and Mesalamine exposure, but also that this injury is medically divisible and reasonably capable of apportionment. Despite the slide pathology having been available for quite some time, the Government has never offered these opinions until shortly before trial. Nor has the Government offered sufficient explanation for the delay.[2] The Government, in short, has failed to demonstrate that its late disclosure of these opinions is substantially justified or harmless. *See* F. R. Civ. P 37(c). The motion to strike is, therefore, GRANTED.

March 15, 2018                                                                                                        /S/
                                                                                                                  Paula Xinis
                                                                                                    United States District Judge

---

[2] The Government argued at today's hearing that it was "surprised" at Harmon's accelerated rate of decline in kidney function which is why its experts' supplemental opinions were unforeseen. However at the September 2017 motions hearing, the very issue of Harmon's accelerated rate of decline was discussed in detail. *See* ECF No. 65, p. 96. (Hall representing that Harmon is "at Stage 3B of CKD. He's almost at Stage 4. If this trial isn't until some time next year, it's possible he could come in here on dialysis. **That's how much he's fallen off the cliff**.")(Emphasis added). The Government's "surprise" argument is unavailing.